WM. S. FOLEY et al., Appellees, v. H. C. LYMAN, Appellant.

PRINCIPAL AND SURETY: Burden of Proof. A gratuitous surety may stand strictly on the terms of his obligation, and the burden of proof is on the one seeking judgment, to establish every fact upon which liability depends. So held where a stockholder of a corporation was obligated as surety for the payment of money which might be borrowed to carry on the "*present*" business of the corporation, but liability was denied because of absence of evidence whether the money was borrowed for said purpose or for other lines of business subsequently pursued by the corporation. .

*Appeal from Osceola District Court.*—WILLIAM HUTCHINSON, Judge.

JUNE 27, 1918.

THE Grain Growers Incorporated Co-operative Associa-

tion of Melvin was organized in 1905. The articles of incorporation fixed its capital at not less than $1,000 and not more than $25,000, divided into shares of $10 each, and its business was that of buying, selling, and ·dealing "in all kinds of farm and dairy products, cattle, swine, sheep, poultry, dry goods, boots and shoes, groceries, hardware, farm machinery, lumber, twine, drain tile, stone, brick, and all kinds of building material,·grain and real estate and dealing in all kinds of merchandise and in buying and selling all such kinds of property on·commission;" and its affairs were to be conducted by "a president, vice-president, secretary, treasurer, and nine directors," who might appoint a general agent to transact such business for and in the name of the association, "who shall act under the direction and control of such officers."· The corporation was forbidden an indebtedness exceeding the amount of two thirds of the shares of stock actually paid up, and the private property of the shareholders was to be exempt from its indebtedness. Another article endowed the corporation with the power to borrow money from time to time, on a two-thirds vote of all its officers, not to exceed the sum of $5,000. The corporation first purchased an elevator, and engaged in handling grain, coal, twine, and probably flour; and, later on, purchased a lumber yard; and dealt somewhat in machinery; and came near engaging in the banking business, but for the discovery of its financial condition. The capital realized from selling stock proved inadequate for the business transacted, and it was carried on with money raised by members of the board·of directors, who executed their individual notes, in borrowing money for that purpose. No evidence of indebtedness or security was taken by them from the corporation. As money was realized from the business, it was applied on the notes executed by the members of the board for borrowed money. In October, 1907, these notes had reached, in the aggregate, $28,000. The plaintiffs, who·are members of the

board of directors in this action, begun January 21, 1915, alleged that, at that time, plaintiffs and defendants, with 58 other persons who were shareholders, meeting on October 26, 1907, unanimously adopted a resolution in words following: "Motion carried that the shareholders will be responsible for any money the board of directors may borrow, from time to time, to carry on the present business," that. plaintiffs, constituting members of said board of directors, together with one Frank Frey, in reliance thereon borrowed $16,000 of the First National Bank of Sibley, for the purpose of carrying on the business of said corporation, and have since paid out of the proceeds of all the property of the corporation so as to reduce the same to $6,648; that said Frey has paid one eighth of this sum; and plaintiffs pray for judgment against defendant for his pro rata share of seven eighths of said sum, with interest thereon from March 24, 1914, for that said plaintiffs have paid said balance, and defendant, as is alleged, is liable, as aforesaid, under and by virtue of said resolution.   Defendant denied: (1) That there was any such meeting of the shareholders as alleged; (2) that any such resolution was adopted; and (3) that any indebtedness accrued such as alleged; and prayed to go hence with his costs.

C. W. Pitts was appointed referee, to report to the court the facts and conclusions of law.   His report was filed October 14, 1916, recommending judgment against the defendant, as prayed.  ·Objections to said report were overruled, and judgment entered accordingly.   The cause comes here on the certificate of the trial court "that said cause is one in which an appeal should be allowed to the Supreme Court of Iowa," and the defendant appealed.—*Reversed.*

*Sargent, Strong & Struble,* for appellant.

*T. E. Diamond,* for appellees.

LADD, J.—The plaintiffs were directors of the Grain

Growers Incorporated Co-operative Association of Melvin, Iowa. It was incorporated in 1905; and, as its capital was less than $5,000, and it might not become indebted for more than two thirds of this, and in no event for more than $5,000, the directors conceived the idea of themselves borrowing money, and operating the enterprise in large measure with money so borrowed. Whether they realized that, in so doing, they were involving the corporation in debt in excess of the limitations mentioned, does not appear; but in this way, the amount of indebtedness for money so borrowed increased, until, on October 26, 1907, it amounted to $28,000. In the meantime, it had purchased a grain elevator, and, up to that time, had been dealing in grain, coal, twine, and possibly flour. The record contains no evidence of the corporation's having been engaged in handling anything else, or that it so did thereafter, until the fall of 1908, when the corporation, through its board of directors, purchased a lumber yard of one Freese, at the price of $2,500 plus the invoice of the lumber on hand, which amounted to something over $15,000. This yard was disposed of in February, 1912, at the same price, with the invoice of lumber then on hand added. No books were kept from which any notion of the business transacted can be ascertained. Whether losses had accrued prior to the adoption of the resolution or subsequent thereto, or from the business then being conducted, or that of handling of lumber, subsequently engaged in, or through speculations or selling on credit, no one is informed by this record. About all that is disclosed is that these directors, after disposing of all the property of the concern and winding up its affairs, discovered that the proceeds lacked $6,648 of being enough to satisfy the notes they had signed, to borrow money for the use of the corporation—a sum much in excess of the indebtedness in which they might, under its articles, involve it, to themselves or others. For the purposes of the case, it

may be conceded that there was a shareholders' meeting, as alleged; that the resolution was adopted; and that defendant offered the resolution and acquiesced therein, as the referee found: and the decision may be allowed to rest solely upon whether liability has been established, under the resolution. This looked to the future. But for the explanatory evidence, the borrowing might well be construed as being that by the board of directors, as such, and representing the corporation, in which event there would be serious doubt as to its validity. See *Trustees of Free Schools v. Flint,* 13 Metc. (Mass.) 539; *Reid v. Eatonton Mfg. Co.,* (Ga.) 2 Am. Rep. 563.

Conceding, without deciding, that the directors individually were intended, however, it is to be observed that the shareholders were to be responsible only for money borrowed "to carry on the present business." What was that business? Dealing in grain, coal, twine, and possibly flour. The association was, at that time, engaged in no other business; and, by the clear language of the resolution, the responsibility assumed by the shareholders was limited to carrying on such business. Under the resolution, the obligation of the shareholders bound thereby was but that of surety, and at that, a surety inveigled into becoming such by the officers, to enable them to evade the plain prohibitions of the articles of incorporation. In these circumstances, plaintiffs are not in a situation to complain if the obligation of the surety be strictly construed, and be not extended by implication. See *Knight v. Waters,* 15 Iowa 420; *Crapo v. Brown,* 40 Iowa 487.

But resort to the doctrine of strict construction is not necessary to the conclusion that the resolution had reference to the business then being conducted, rather than to what the corporate articles authorized. The many lines of endeavor the association might engage in, emphasized designation of the "present business" as that to carry on which

money might be borrowed. Was money borrowed to carry on that business? The record is silent. Was there any loss of money borrowed to carry on such business? Again, the record is silent. Was the money borrowed to purchase the lumber yard and lumber, or was this loss consequent upon such enterprise? If so, those bound only by the resolution are not responsible therefor. The burden of proof was on the plaintiffs to show that the amount claimed to have been lost, or some of it, was money borrowed to carry on the business then being conducted, i. e., that of dealing in grain, coal, twine, and flour,—and this they wholly failed to do. Having reached this conclusion, there is no occasion to pass upon the issue as to whether the resolution, because of not being signed, is within the statute of frauds.

The judgment is—*Reversed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.